UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA LAURA JIMENEZ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI, acting<br>Commissioner of Social Security,<br><br>　　　　　Defendant. | No. 1:21-cv-00279-JLT-GSA<br><br><br>**FINDINGS AND RECOMMENDATIONS TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 21, 26)**<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS** |

## I.　　Introduction

Plaintiff Ana Laura Jimenez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act.  The matter is before the undersigned for issuance of Findings and Recommendations based on the parties' briefs.[1]  Docs. 21, 26.  After reviewing the record the undersigned finds that substantial evidence and applicable law support the ALJ's decision and recommends that the Court direct entry of judgment in favor of Defendant, against Plaintiff, affirming the final decision of the Commissioner of Social Security.

## II.　　Factual and Procedural Background[2]

On November 18, 2015 Plaintiff applied for supplemental security income.  The Commissioner denied the application initially on September 9, 2016 and on reconsideration on November 28, 2016.  AR 72, 76.  A hearing was held before an Administrative Law Judge (the

---

[1] The parties did not consent to jurisdiction the Magistrate Judge.  *See* Docs 7, 11.  Accordingly, the matter was reassigned to District Judge Anthony Ishii and, upon his retirement, the matter was reassigned to District Judge Jennifer Thurston on April 11, 2023.  Doc. 27.

[2] The undersigned has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized.  Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

"ALJ") on July 9, 2019.   AR 34–57.   On August 20, 2019 the ALJ issued an unfavorable decision.  AR 15–33.  The Appeals Council denied review on June 11, 2020.  AR 7–12.

### III.    The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.   "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).       When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.
>
> 42 U.S.C. §1382c(a)(3)(B).

2

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.   20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff  bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## IV.    The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of November 18, 2015.  AR 20.  At step two the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; carpal tunnel syndrome; right shoulder impingement syndrome; and, obesity.  AR 20.   The ALJ also determined at step two that Plaintiff had the following non-severe impairments: non-insulin dependent diabetes mellitus; hypertension; coronary artery disease; Bell's palsy; "acute cholecystitis with gallstones pancreatitis;" and, depressive disorder.  AR 21–22.  At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 22.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R.

416.967(a) with the following additional restrictions: the ability to stand and stretch for 3-5 minutes for every 30 minutes of sitting but while remaining on task; no kneeling, crawling, or crouching; occasional balancing and stooping; occasional climbing of ramps and stairs; no climbing ladders, ropes or scaffolds; no more than occasional overhead reaching with the right dominant upper extremity; no more than frequent reaching in all other directions; no more than frequent handling, fingering, and feeling with the right dominant upper extremity; no more than frequent use of the left dominant upper extremity; no unprotected heights; no dangerous moving machinery; no work near vibrations; cannot ambulate on uneven terrain; and, requires an assistive device for more than 15 minutes of walking.  AR 22–27.

At step four the ALJ concluded that Plaintiff could not perform her past relevant work as a caregiver or stock clerk.  AR 27–28.  At step five, in reliance on the VE's testimony, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: addressing clerk; document preparer (microfilm); and escort vehicle driver. AR 28–29.  Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since her application date of November 18, 2015.  AR 29.

## V.   Issues Presented

Plaintiff asserts two claims of error: 1) that the ALJ erred by rejecting Dr. Fabella's opinion without setting forth specific legitimate reasons; 2) that the ALJ failed to satisfy her burden at step five that there are jobs existing in sufficient numbers in the national economy the Plaintiff could perform.

### A.   Dr. Fabella's Opinion

#### 1.   Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations"

and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  *Robbins,* 466 F.3d at 883*.  See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed before March 27, 2017, the regulations provide that more weight is generally given to the opinion of treating physicians, which are given controlling weight when well supported by clinical evidence and not inconsistent with other substantial evidence.  20 C.F.R. § 404.1527(c)(2); *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) (noting that the opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations).

An ALJ may reject an uncontradicted opinion of a treating or examining physician only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining physician may be rejected for "specific and legitimate" reasons.  *Id.* at 830.  In either case, the opinions of a treating or examining physician are "not necessarily

conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).   Regardless of source, all medical opinions that are not given controlling weight are evaluated using the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization.  20 C.F.R. § 404.1527(c).   The opinion of a non-examining physician (such as a state agency physician) may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### 2.   Analysis

#### a.    Dr. Fabella's Exam Notes, Opinion, and Questionnaire

On June 18, 2019 Dr. Fabella conducted a consultative physical examination of Plaintiff at the request of the agency and prepared a corresponding narrative opinion (AR 713-718) as well as a check-box questionnaire (the "Medical Statement of Ability to do Work Related Activities") (AR 1719–24).

Dr. Fabella's objective examination noted, among other things: obesity and pain mannerisms; slow, stiff, and mildly wide-based gait at a rate of two step every three seconds; unsteadiness with heel and toe walking; decrease lumbar range of motion (ROM); positive straight leg raise bilaterally; decrease right shoulder ROM; and, positive Tinel's and Phalen's sign of the left wrist.  AR 716–17.  Dr. Fabella diagnosed low back pain with positive straight leg raise; right shoulder impingement syndrome; and, "carpal tunnel symptomology and examination findings on the left hand."  AR 1717.

In Dr. Fabella's narrative opinion, he opined that Plaintiff could: lift 10 pounds occasionally and less than 10 frequently; stand and walk less than 4 hours in an eight-hour day; would benefit from breaks every 30 minutes of sitting; would benefit from the use of a walker when walking more than 15 minutes; could occasionally climb, balance, kneel, or crawl; could

not walk on uneven terrain, climb ladders, or work at heights; and,  was mildly impaired in her ability to perform left handed gross or fine manipulation.  AR 1717.  Dr. Fabella specified for each limitation that it was secondary to some combination of low back pain, impaired gait, shoulder impingement, and/or carpal tunnel.  *Id.*

In the check-box questionnaire, Dr. Fabella similarly opined as to Plaintiff's exertional limitations and further opined that she could: sit no more than 30 consecutive minutes and 2 hours in a day; stand and walk no more than 15 consecutive minutes and 2 hours in a day; spends 3 hours a day laying down; could occasionally reach overhead on the right and frequently reach in all other directions; could not walk a block at a reasonable pace on rough or uneven surfaces; and, could not climb steps at a reasonable pace with only the use of a single hand rail.  AR 1721–24.

### b.   The ALJ's Specific Reasons for Discounting Dr. Fabella's Opinions

The ALJ offered the following discussion of the opinion:

> I give this opinion only some weight for the following reasons. The medical record will not support standing/walking limitations because there are no objective findings to support the extreme limitations. The undersigned points out that it appears that Dr. Fabella based his opinion on the claimant's subjective complaints and noted symptoms. I also find a bit nonsensical his limitation that the claimant could occasionally climb stairs but then reported that she could not walk even one block at a reasonable pace or climb a few steps with the use of a handrail. Moreover, despite Dr. Fabella's findings he opined that the claimant could shop, prepare simple meals, take care of her personal hygiene needs, and sort and handle paper files but would need to lay down three hours per day.

AR 27.

To begin, there is no significant conflict between laying down 3 hours a day and shopping, simple meal preparation, personal hygiene, and sorting paper files.  Further, there is nothing inherently wrong with Dr. Fabella basing his opinion on Plaintiff's subjective statements if he felt they were supported by his examination.  It is worth noting however, that he did phrase the 3 hour laying down limitation as a recitation of what Plaintiff told him she does each day as

7

opposed to a definitive statement of what accommodations she requires.  *See* AR 1720 ("she spends 3 hours laying down.").

### c.   The Broader Medical Record

Plaintiff emphasizes a variety of objective evidence she contends supports Dr. Fabella's opinion, including: **1**) Dr. Fabella's examination (AR 1715-17) showing gait dysfunction, obesity, pain mannerisms, decreased lumbar ROM, positive straight leg raise, positive tinel's and phalen's sign at the wrist, and decreased range of motion at the right shoulder; **2**) 2015 lumbar spine MRI showing mild disc space height loss at L5-S1 with spurring, small posterior disc bulge at L4-L5 with narrowing of the central canal, and  L5-S1 right paracentral disc protrusion creating focal encroachment of the right side of the thecal sac and indentation on the anterior aspect of the S1 nerve root (AR 489);  **3**) February 18, 2016 examination findings of decreased strength (3-/5), reduced lumbar ROM, decreased trunk rotation when walking, paraspinal muscle tenderness, painful ankle dorsiflexion (AR 456); **4**) updated lumbar MRI in March 2017 showing L5-S1 paracentral disc protrusion possibly representing an annular tear "which can be a pain generator" (AR 650); **5**) Dr. Halol's examination notes of moderately reduced lumbar ROM and positive straight leg raise (AR 1299); and, **6**) Dr. Nguyen's records of pain management prescriptions for lumbar radiculopathy throughout the relevant period, objective findings of lumbar spine tenderness, reduced ROM and positive straight leg raise, and referrals for physical therapy, pain management and neurosurgery.  AR 1336, 1346, 1363, 1373, 1414, and 1425.

As such, Plaintiff disputes the accuracy of the ALJ's assertion that there are "no objective findings" to support Dr. Fabella's opined limitations.  However, the ALJ's full statement was a bit more nuanced than Plaintiff suggests: "The medical record will not support standing/walking limitations because there are no objective findings to support the extreme limitations."  AR 27. Further, the ALJ may not have pin-cited each record Plaintiff emphasizes, but the ALJ did

discuss: **1**) the pertinent examination findings by Dr. Fabella (*see* AR 25); **2**) the MRI findings (AR 24, 25); and, **3**) Dr. Nguyen's treatment records for chronic lumbar radiculopathy, associated pain medication management including Norco (AR 23, 27), and referral for physical therapy (AR 25).

The mild spinal pathology without demonstration of neural impingement was also emphasized by the independent medical examiner Dr. Jilhewar, who reviewed the same records and testified at the administrative hearing, testimony which the ALJ relied upon in reaching her RFC. AR 47.  Granted, as Plaintiff cites, the December 16, 2015 MRI did describe the L5-S1 disc protrusion as "creating focal encroachment on the right side of the thecal sac and *indentation on the anterior aspect of the S1 nerve root*", which does appear to describe neural impingement (AR 489 (emphasis added), whereas the March 2017 MRI report identified the same L5-S1 disc protrusion "without frank demonstration of neural impingement."  AR 650-51.  The ALJ did cite and correctly describe each MRI report, but did not specifically draw that distinction.

Further, neither the ALJ nor Dr. Jilhewar acknowledged the statement Plaintiff emphasizes from the March 2017 MRI report, just prior to the final impression, which noted "high signal intensity within the disc protrusion which may represent an annular tear. *This can be a pain generator*." AR 650 (emphasis added).  Thus, as Plaintiff emphasizes, this MRI report tends to corroborate Plaintiff's allegation of radicular pain even in the absence of neural impingement, as does her pain management treatment with Dr. Nguyen including Norco and physical therapy.

But neither the ALJ nor Dr. Jilhewar refuted the existence of radicular pain as they both acknowledged the records demonstrating positive straight leg raises (a nerve root tension sign indicative of radicular pain).  As to the functional limitation arising therefrom, the ALJ and Dr. Jilhewar acknowledged the findings of unsteady gait as well, but found nothing else to

corroborate gait instability given Plaintiff's routinely normal neurological examinations.

For instance, Dr. Jilhewar cited the emergency department visit in October of 2018 (which he cited as Exhibit 6F at 6 though it's in fact 6F page 7) which noted "no neurologic deficits," as well as full 5/5 motor strength throughout and a normal gait.  AR 48 (citing AR 635).   The ALJ cited an additional examination from October 2015 also noting Plaintiff was neurologically intact with no sensory or motor deficits.  AR 24 (citing Ex. 2F at 15-16, 26 (AR 320-21)).  The ALJ further cited a November 2018 exam noting normal range of motion and full strength with no neurological deficits.  AR 25 (citing Ex. 5F at 17 (AR 521)).  Finally, The ALJ cited Dr. Fabella's own examination which noted reduced lumbar ROM in forward flexion but otherwise normal ROM and full motor strength with no focal neurological deficits.  AR 25 (citing AR 1716).

Further, as to the limiting effects of the pain itself, irrespective of the existence of focal neurological deficits caused by the spinal conditions, the ALJ did acknowledge Plaintiff's pain management history which included Norco, but ultimately concluded Plaintiff's treatment was "fairly conservative."  AR 27.  An impairment for which a claimant receives only conservative treatment is an appropriate reason to reject an opinion the impairment is disabling. *Jackson v. Colvin*, No. 2:15-CV-06123 (VEB), 2016 WL 5947225, at *5 (C.D. Cal. Oct. 12, 2016), (citing *Johnson v. Shalala*, 60 F.3d 1428,1434 (9th Cir. 1995)).

On this point, Courts have offered different conclusions as to whether opiate based pain medication, such as Norco, are appropriately considered "conservative."  Some have found opiate medications conservative.  *See, e.g. McDonald v. Berryhill,* No. 1:16–cv–01477–SKO, 2018 WL 1142192, at *17 (E.D. Cal. Mar. 2, 2018) ("Plaintiff's argument that Vicodin and Lyrica are not conservative prescription treatments is unavailing."); *Huizar v. Comm'r of Social Sec.*, 428 Fed. Appx. 678, 680 (9th Cir. 2011) (finding that plaintiff responded favorably to conservative treatment, which included "the use of narcotic/opiate pain medications").

Some have found opiate medications conservative even when paired with other therapies such as epidural injections. *Martin v. Colvin*, 2017 WL 615196, at *10 (E.D. Cal. Feb. 14, 2017) ("[T]he fact that Plaintiff has been prescribed narcotic medication or received injections does not negate the reasonableness of the ALJ's finding that Plaintiff's treatment as a whole was conservative . . ."); *Jones v. Comm'r of Soc. Sec.*, No. 2:12–cv– 01714–KJN, 2014 WL 228590, at *7–10 (E.D. Cal. Jan. 21, 2014) (ALJ properly found plaintiff's treatment conservative which included physical therapy, anti-inflammatory and narcotic medications, use of a TENS unit, occasional epidural steroid injections, and massage therapy).

Still others have suggested that "treatment with narcotic pain relievers has generally been found to be nonconservative when combined with other treatments—such as surgery, steroid or epidural injections, or referral for necessary further treatment." *Grisel v. Colvin*, No. CV 13-0623-JPR, 2014 WL 1315894, at *12 (C.D. Cal. Apr. 2, 2014).

As Dr. Jilhewar noted, there was no evidence here of interventional procedures one would expect to see when pain medication failed, such as epidural steroid injections, facet injections, radiofrequency ablation, spinal cord stimulator, or morphine pump.  AR 46-47.  On the other hand, Plaintiff emphasizes she was referred to neurosurgery.  AR 1336, 1346, 1363, 1373, 1414, and 1425.   But in the same records noting the surgical referral, Dr. Nguyen describes the March 24, 2017 MRI results as "mild degenerative changes, focal disc protrusion at L5-S1 without frank demonstration of neural impingement."  AR 1336; *see also* AR 1346-47 (same); AR 1363 ("mild degenerative changes . . . no neural impingement."); AR 1373 (same); AR 1414 (same); AR 1425 (same).  The isolated references in these records to a referral to neurosurgery is not tantamount to a recommendation that she undergo surgery for mild abnormalities with no neural impingement.  Thus, the ALJ reasonably concluded Plaintiff's care was conservative.

d.    **The Specific Omissions in the RFC**

The ALJ notably did include restrictions in the RFC which were at least as restrictive as Dr. Fabella's opinion in most respects, more restrictive in others, and in a few instances she did not fully embrace Dr. Fabella's opinion. To illustrate, despite the ALJ's language only assigning Dr. Fabella's opinions some weight, the ALJ did incorporate Dr. Fabella's <u>narrative</u> opinion in all respects including: **1**) 10 pound lift/carry threshold (which is inherent in the definition of sedentary work. *See* 20 C.F.R. 416.967(a), SSR 83-10)); **2**) the 3 hour total daily sit/stand threshold (also inherent in the definition of sedentary work. Which requires "about 2 hours."[3]; **3**) a break from sitting every 30 minutes; **4**) use of a walker beyond 15 minutes; **5**) no more than occasional postural movements; **6**) no walking on uneven terrain; **7**) no climbing ramps; and, **8**) no exposure to heights. AR 22.

The ALJ also incorporated Dr. Fabella's check-box questionnaire in most respects including all of the overlapping restrictions noted in the narrative opinion, as well as the limitations on reaching, handling, fingering, and occasional stair climbing. The ALJ did not incorporate the limitations on pushing, pulling, operating foot controls, moving mechanical parts, motor vehicle operation,[4] humidity and wetness, pulmonary irritants, extreme cold or extreme heat. (AR 1721). However, Plaintiff did not specifically draw attention to these omissions, or contend here that those omissions were harmful error.

The remaining omissions of Dr, Fabella's identified restrictions warrant additional discussion, including: **1**) 15 minute limitation on consecutive stand/walk; **2**) the statement that she could not walk a block at a reasonable pace on rough or uneven surfaces; **3**) the statement that Plaintiff could not climb a few steps at a reasonable pace with use of a handrail; and **4**) the 2 hour

---

[3] It actually requires "occasional" sit/stand which means 1/3 of an 8-hour day (i.e. 2.67 hours) though SSR 83-10 expresses that as "about 2 hours." *See* 20 C.F.R. 416.967(a); SSR 83-10.

[4] Though not raised by Plaintiff, this limitation would certainly preclude work as an escort driver, which was one of the three jobs identified by the VE at step five. That job is precluded for other reasons, however, and did not impact the outcome.

1    limit on total daily sitting,

2         With respect to Dr. Fabella's check box questionnaire noting a maximum of 15 minutes of

3

4    standing and walking at one time, as the ALJ noted those appear to be a recital of Plaintiff's self-

5    reported limitations which, again, is not troublesome if he concluded they were true and accurate

6    based on his observations of her during examination.  That restriction, however, was noticeably

7    absent from his narrative opinion which only opined on total stand/walk.  Moreover, Dr. Fabella's

8    narrative opinion stated she would benefit from the use of an assistive device to walk more than

9    15 minutes.  AR 1717.  This undermines the statement in his check-box questionnaire that she

10   could not stand or walk longer than 15 minutes.  Based on his narrative opinion, she could indeed

11   persist longer than 15 minutes, she just needed an assistive device to do so.  Accordingly, despite

12

13   purporting to reject Dr. Fabella's extreme limitations on standing and walking, the ALJ did not in

14   fact reject this limitation because the RFC did provide for the use of an assistive device when

15   walking for more than 15 minutes. AR 22.

16        The ALJ found it "a bit nonsensical [Dr. Fabella's] limitation that the claimant could

17   occasionally climb stairs but then reported that *she could not walk even one block at a reasonable*

18   *pace* or climb a few steps with the use of a handrail."  AR 27 (emphasis added).  Plaintiff

19   contends the ALJ's reasoning was unpersuasive as there is no inconsistency between those

20   activities.  The undersigned agrees.   The ALJ misread the limitation in the check-box

21   questionnaire which did not just ask about walking speed generally, but asked whether the

22

23   individual "can walk a block at a reasonable pace *on rough or uneven surfaces*."  AR 1724

24   (emphasis added).  In the ALJ's  effort to reconcile what she perceived as competing statements

25   in Dr. Fabella's opinion, the ALJ appears to have overlooked that she had already included a

26   stronger restriction in the RFC, namely that Plaintiff "cannot ambulate on uneven terrain."[5]

27

28
_____
[5] The ALJ also overlooked the VE's testimony that the prohibition on uneven terrain ambulation precludes work as

1

2

Hence, if Plaintiff could not walk on uneven terrain (as the ALJ found), then whether she could

3

do so at a reasonable pace is not relevant.

4

The ALJ also found it "a bit nonsensical" that Dr. Fabella opined Plaintiff could

5

occasionally climb stairs but subsequently reported she could not climb even a few steps at a

6

reasonable pace using a single hand rail.  Plaintiff argues this is a contrived inconsistency as she

7

could occasionally climb stairs, just not a normal pace.  The ALJ's assertion that Dr. Fabella's

8

statements are "nonsensical" is overstated and somewhat gives the impression that Dr. Fabella

9

independently came up with the language of the restriction concerning inability to climb a few

10

steps at a reasonable pace using a single handrail.  This is an oddly specific restriction to be sure,

11

but that is indeed one of the questions asked on SSA's form HA-1151, which the agency

12

apparently considered important when assessing residual functional capacity[6] *as a distinct matter*

13

14

from the earlier question on the form about the frequency of stair climbing.

15

To the Commissioner's point, it could certainly be argued that Dr. Fabella's responses are

16

in tension.  Occasional stair climbing (1/3 of an 8-hour day) does seem to be a lot of  stair

17

climbing for an individual who cannot traverse a few steps at a reasonable pace using a handrail

18

(which is more true of frequent stair climbing and continuous stair climbing).  But if the only

19

consistent response to the question about stair climbing frequency is that such an individual could

20

*never* climb stairs at all, what purpose would the subsequent question about climbing pace serve?

21

If the physician responded "never" to the first question regarding stair climbing frequency, all

22

stair climbing would be precluded regardless of pace and the second question would serve no

23

purpose.  Further, if the physician checked any of the other boxes regarding stair climbing

24

frequency (occasional, frequent, or continuous), the ALJ could dismiss a negative response to the

25

second question regarding stair climbing pace as "nonsensical."  Thus, the second question would

26

27

28

an escort driver, but that error is brought to bear at step 5 as discussed below.
[6] https://omb.report/omb/0960-0662

still serve no purpose.  Thus Dr. Fabella's responses were neither nonsensical nor inconsistent, he simply answered the questions on a pre-printed form published by the agency.

Notwithstanding, for all of the reasons discussed above (lack of consistent objective abnormalities related to gait instability, motor strength deficiency, or other neurological deficiency; lack of interventional pain procedures; and the opinion of independent medical examiner Dr. Jilhewar who did have access to the whole medical file), the ALJ did not err in failing to adopt the restriction that Plaintiff could not climb a few steps at a reasonable pace with use of a single handrail.

The same is true of the limitation regarding 3 hours of laying down, particularly given it was not presented as a limitation in so many words but was a recitation of what Plaintiff told Dr. Fabella.  *See* AR 1720 ("she spends 3 hours lying down.").  Further, this was information Dr. Fabella provided in the check-box questionnaire explaining why the total durational sit, stand, walk figures added up to only 5 hours instead of 8 hours,  but he noted no such restriction in his narrative opinion.

Finally, as to sitting duration, the ALJ did <u>not</u> incorporate the 2 hour limit on total daily sitting duration.  This appears to be a significant omission as it is fundamentally at odds with demands of sedentary work which involves 6 hours of sitting.  *See* SSR 83-10.  At the outset of the paragraph reciting Dr. Fabella's opinion, the ALJ misstated that Dr. Fabella opined Plaintiff could sit 4 hours at one time and 6 hours in a workday, after which the ALJ correctly stated that Dr. Fabella opined Plaintiff could sit 30 minutes at a time and 2 hours in a workday.  AR 26 (citing Ex. 12F/8-12, AR 1720–23).  It is not clear where the 4 or 6-hour sitting duration figures came from, but they do not appear in Dr. Fabella's narrative or check-box questionnaire.

Further, the ALJ's articulated reasoning for rejecting Dr. Fabella's opinion did not address the supportability of the limitations regarding sitting, but only addressed standing, walking, and

stair climbing.   The ALJ's discussion suggests the ALJ was either not aware or simply overlooked exactly what Dr. Fabella opined with respect to maximum daily sitting duration, or the fact that the RFC omitted that restriction on sitting duration.

Nevertheless, there are a number of considerations that counsel against remanding on this basis alone.   First, Dr. Fabella's narrative opinion discussed a 30 minute limitation on consecutive sitting (AR 1717), not a 2-hour total limitation in an 8-hour day as he identified in the check-box questionnaire (AR 1720).   In other words, he only came up with the aggregate sitting restriction when prompted by the questionnaire.

Second, Plaintiff reported to Dr. Fabella that she could sit, stand, and walk for 30, 15, and 15 minutes respectively which he apparently understood to be limits on consecutive (not aggregate) sitting, standing, and walking.   Importantly Plaintiff did not indicate to Dr. Fabella that she had any aggregate sitting, standing and walking limitations in general, or during a typical 8-hour work day.

Moreover, despite Plaintiff's generalization that "the RFC fails to account for the full impact of Plaintiff's symptoms related to her back pain as assessed by Dr. Fabella," Plaintiff did not undertake the more detail oriented task of identifying the specific respects in which the RFC differed from Dr. Fabella's opinion, nor did Plaintiff specifically underscore the 2-hour total durational sitting limitation as one of the omissions requiring remand, nor identify objective evidence that would support the restriction.

Further, the sitting limitation is not exemplary of Plaintiff's central thesis that the ALJ failed to fully account for limitations attributable to her back pain.   Plaintiff's hearing testimony cited edema in her legs as the impediment to sitting, not her back pain.   *See* AR 41 ("I lose my balance a lot, so I have to be standing, walking or laying down to make sure that my legs don't get swollen.").   Conversely, Dr. Fabella opined her sitting limitations were attributable to back pain,

16

yet his examination noted no edema.  AR 1716.

Further, other records during the relevant period referencing edema suggested the condition was trace or mild.  *See* AR 353, 805 (trace edema); 705 (mild edema of bilateral feet per April 2016 Emergency Department note).  During her hearing testimony Plaintiff referenced a recent emergency department visit the Thursday during the week of her July 9, 2019 hearing and stated she was told she had a really bad case of edema.  AR 42.  However, there do not appear to be any records from a July 2019 emergency department visit.  A visit dated April 24, 2019 reflects a finding of "1+ pitting edema to BLE and hands."  AR 1696.  She was discharged the same day in stable condition, instructed to follow up with her PMD, and advised to follow a low salt diet. 1697–98.  The records regarding edema do not appear to support a 2 hour aggregate daily sitting limitation.

In short, Plaintiff reported to Dr. Fabella she could only sit for 30 minutes, Dr. Fabella's narrative opinion reflects a restriction to sitting no longer than 30 consecutive minutes and the ALJ included in the RFC a restriction to sitting no longer than 30 consecutive minutes.  The fact that Dr. Fabella also noted on a separate form that she had a 2-hour aggregate daily sitting limitation did not justify inclusion of that limitation where Plaintiff reported no such restriction to him, to the ALJ, or otherwise, and where the condition she attributed her sitting limitations to (edema) was described as "mild," "trace" or "1+" in the treatment records.   The RFC's 3-5 minute stand and stretch break every 30 minutes of sitting reasonably accounted for Plaintiff's need for relief from leg edema.

In sum, Plaintiff identifies no harmful error in the ALJ's treatment of Dr. Fabella's opinions.

**B.    The Step 5 Findings**

At step five, in reliance on the VE's testimony, the ALJ found that Plaintiff could perform

jobs existing in significant numbers in the national economy, namely: **1**) addressing clerk, (DOT#209.587-010) sedentary exertion with SVP2 rating with approximately 6,311 jobs nationally; **2**) document preparer, microfilm, (DOT#249.587-018) sedentary exertion with SVP 2 rating with 143,000 jobs nationally; and, **3**) escort vehicle driver, (DOT#919.663-022) sedentary exertion with SVP 2 rating with 21,000 jobs nationally.

As Plaintiff points out, the VE testified that inability to walk on uneven terrain (as the ALJ included in the RFC here) eliminates the job of escort driver because of the possibility of walking on the side of a highway. AR 54. Thus, the ALJ should not have included that job at step five. Defendant agrees.

As to the job of addressing clerk, Plaintiff contends it is obsolete. That contention need not be addressed because the 6,311 available jobs falls well below the 25,000 job threshold identified by the Ninth Circuit as "significant numbers." *See Gutierrez v. Colvin*, 740 F.2d 519, 529 (9th Cir. 2014).

This leaves *document preparer*, which the VE testified has 143,000 jobs in the national economy. AR 54. Plaintiff likewise argues that this job is obsolete and cites several unpublished, out of circuit, district court opinions for the proposition that "an increasing number of courts have recognized the obsolete nature of the document preparer position and remanded for further administrative proceedings where there is no record evidence of other jobs existing in significant numbers that a plaintiff can perform." *Id.* at 13 (quoting *Corey S. v. Commr. of Soc. Sec.,* 5:20-CV-0678, 2021 WL 2935917, at *10 (N.D.N.Y. July 13, 2021); citing *Zacharopoulos v. Saul*, No. 19-CV-5075, 2021 WL 235630, at *8 (E.D.N.Y. Jan. 25, 2021.) .

Plaintiff also cites the Sixth Circuit's opinion in *Cunningham* in which the Court stated, "While the Social Security Commissioner does take administrative notice of [the DOT] when determining if jobs exist in the national economy, 20 C.F.R. § 404.1566(d)(1), common sense

18

dictates that when such descriptions appear obsolete, a more recent source of information should be consulted. The two relevant descriptions here - document preparer and security camera monitor -strike us as potentially vulnerable for this reason. Without more, however, we cannot adequately review whether these job descriptions were up-to-date and, thus, whether the VE's testimony was reliable."

Plaintiff's argument is not well developed as to why this Court should join with the other courts on this point. For instance, Plaintiff does not quote or discuss the actual language of the DOT description and explain why, in Plaintiff's view, this Court should join the Sixth Circuit in concluding that common sense dictates that the DOT description paints the picture of an obsolete job.

The full language is as follows:

> Prepares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices: Cuts documents into individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife. Reproduces document pages as necessary to improve clarity or to reduce one or more pages into single page of standard microfilming size, using photocopying machine. Stamps standard symbols on pages or inserts instruction cards between pages of material to notify MICROFILM-CAMERA OPERATOR (business ser.) 976.682-022 of special handling, such as manual repositioning, during microfilming. Prepares cover sheet and document folder for material and index card for company files indicating information, such as firm name and address, product category, and index code, to identify material. Inserts material to be filmed in document folder and files folder for processing according to index code and filming priority schedule.

DOT 249.587-018.

It is debatable whether this describes obsolete job duties. Further, as Defendant notes in response, the VE explained that "document preparer, microfilming . . . is now scanning documents into a digital database." AR 54. Defendant further cites cases upholding a step five finding based upon ability to perform the job of document preparer, microfilming. Resp. at 10 (citing *Dawn H. v. Berryhill*, No. 3:17-cv-1927-SI, 2019 WL 281289, at *6 & n.4 (D. Or. Jan. 22,

2019) (finding ALJ did not err in finding claimant could perform document preparer position, which was not limited to microfilm equipment); *Wyatt C. v. Comm'r*, No. 2:17-cv-01283-HZ, 2018 WL 4600289, at *3 (D. Or. Sep. 22, 2018) (affirming where "the [vocational expert] provided a reasonable explanation and adequate basis for the ALJ to rely on her classification of microfilming document prepare[r] over the DOT's classification" because "the 'microfilming' requirement of the job was outdated [and] the position merely required scanning documents").

Plaintiff filed no reply addressing this case law explaining why she believes the job is still obsolete notwithstanding the VE's updated description of the job duties, or otherwise explaining why the VE's response was inadequate to sustain the Commissioner's burden at step five.  No counterargument readily comes to mind.

The ALJ reasonably relied on the VE's testimony that an individual with Plaintiff's RFC could perform the job of document preparer with over 143,000 jobs nationally and which, contrary to the DOT's outdated description of obsolete duties, now requires scanning documents into a database.

## VI.   Conclusion

For the reasons stated above, the undersigned recommends that the Court find that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.  The undersigned further recommends that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be denied, and that the Clerk of Court be directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Ana Laura Jimenez.

## VII.   Objections Due within 14 Days

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

20

fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court.   The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

   Dated:   **April 27, 2023**                    **/s/ Gary S. Austin**
                                               UNITED STATES MAGISTRATE JUDGE